Lobing-, J.,
dissenting:
I concur in so much of the opinion of the majority of the court as finds that the marginal endorsement on the bill of lading was not a part of the contract, but I dissent from their conclusion.
The petitioners in this case make two claims: First. For damages for injuries to their vessel. Second. For demurrage.
*263 The contract in this case is not, as the documents from the-department assume, a charter-party, by which a vessel is let to the hirer, like a house to its lessee; but it is a bill of lading only, and that is merely a contract for the carriage of goods from one place to another. And it gives to the shipper of the goods no possession or control of the vessel, and neither places her in his service nor subjects her to his orders. And in this respect it is immaterial whether there are a dozen shippers, each with his separate bill of lading for his separate goods, or whether there is, as here, a single shipper and a single bill of lading. And in this case the only right of the United States, and the only duty of the owners, was that the coals should be carried from Philadelphia to Port Royal, and delivered there according to the tenor of the bill of lading.
Under the bill of lading the coals were carried to Port Royal and the United States refused to receive them there. The owners had then performed their contract as carriers, and earned their freight; for they had done all that they were bound to do under the bill of lading, and they had a perfect right to put the coals ashore and store them there at the cost and risk of the United States.
Then the vessel, against the objections and protest of the master, who represented the owners, was taken from the disposition and control of the master and owners, and into the service of the United States, by their military authorities. And thus the rights and powers of ownership, and their free enjoyment, were taken from the claimants by the United States and appropriated to themselves for' such time as they pleased. And for the reasons I stated in the case of Russell v. The United States, I think that this was uan appropriation” by the army, within the statute of July 4th, 1864; and that the claim for damages for such appropriation and all its consequences are removed from our jurisdiction.
As to the claim for demurrage: The bill of lading allowed the United States twenty-one days for discharging cargo at Port Royal, and subjected them to the payment- of $100 per dayfor any delay in discharging beyond the twenty-one days. The vessel arrived at Port Royal May 4, I860; so that the twenty-one days would have expired on the 26th day of May, and before that time no claim for demurrage could begin. Put the vessel was impressed or appropriated by the officers at Port Royal, on the 8tb *264 day of May; and sucb taking I think, on the.evidence and in the circumstances, was lawful and the exercise by the United States of their right of eminent domain. But it was inconsistent with the contract of the bill of lading, and with its provisions for discharging the coal there within twenty-one days, and its relations of the parties; and it therefore necessarily determined that contract, and made a new relation of the parties from the taking; for therefrom the owners were entitled to, and the United States were liable for, an indemnity under the constitutional provision. So that the facts, I think, preclude any claim for demurrage under the bill of lading, for that was annulled before shell claim could arise on it.
On the whole case I think the defendants entitled to judgment.